IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA



FILED
JUL 9 2002
Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| JOSHY MATHAPPAN ALEPARAMBU, SHAJI ALLALANGIL, MOHAMMED NASROOL HODA ANSARI, HEYATUNABI ANSARI, JOHNKUTTY ANTONY PANACKALPURACKAL, JOSEPH CHAKKUNGAL PAULOSE, BABU THANU CHELLEN, RAJASEKHARAN CHERUVOTH, SRINIVAS GOPISETTI, KALASUVA JIVA DHANJI, SRINU KALLA, SURENDRAN VELAYUDHAN KATTU-KANDATHIL, KRISHNANKUTTY KUNJIPILLAI, RAJE KURIAKOT-PARAN, UDAY DATTATRAY LUDBE, POULOSE MALERIL-VARKEY, JOSE VARGHESE MANNALIL, VENU MARTHI, EBRAHIM IDRIS MOHAMMED, TOOFAN MONDAL, JONATHAN PETER MORAES, NANI BABU MULAKA, BHARATHAKUMARAN RAMACHANDRAN NAIR, SUDARSHANAM NEERUDI, JOHNKUTTY AMBROSE PANACKAL PURACKAL, JOHNKUTTY GEORGE PANACKALPURACKAL, ROY JUSTUS PANACKALPURACKAL, ANTONY PRADEEP PANACKALPURAKAL, REYNOLD PANDIYALACKAL GREGORY, LAWRENCE PANDYALAKAL ANTONY, KANAIYALAL KANTILAL PATEL, SATISHKUMAR CHHOTABHAI PATEL, HIMANSHU SHIVABHAI PATEL, JITENDRABHAI PRABHUDAS PATEL, YOGESH KUMAR PATEL, UMESHKUMAR CHANDUBHAI PATEL, HASMUKHLAL CHHAGANLAL PATEL, RAMESH CHANDRA CHHIKA BHAI PATEL, PAULY AUGUSTINE PERUMBULLY, JERON PETER, BABURAJAN MADHAVAN PILLAI, JAGDISH VIRJIBHAI PRAJAPATI, MATHA CHINNA RAO, NOOKA APPA RAO RAPETI, NARENDRAKUMAR RATHOD, BALA RAJU SALAPU, VIVEK KUMAR GANPAT RAO SAVANT, ARIFHUSEN GULAMMAHMAD SHAJKH, MARSHAL JOSEPH SUARES, JOY VALLIARIL-VARGHESE, RAMNIKBHAI LALGIBHAI VANKAR, SUNNY CHANDY VAZHAYINAL, JOHN DOE and RICHARD DOE, | Case No. 02-CV-85 EA(M) |

47

|  |  |
|---|---|
| Plaintiffs, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| JOHN PICKLE CO., INC., a domestic corporation, | ) |
|  | ) |
| Defendant. | ) |

## PLAINTIFFS' FIFTH AMENDED COMPLAINT

Come now the Plaintiffs, by and through their attorneys of record, Fred E. Stoops, Keith A. Ward and Richard D. Marrs, of the law firm of RICHARDSON, STOOPS, RICHARDSON & WARD, and state as follows:

### JURISDICTION AND VENUE

1.   Each of the named Plaintiffs are citizens of India, legally residing in the United States and are all former employees of John Pickle Company, Inc. (hereinafter "John Pickle, Inc.").

2.   Richard Roe and Joe Doe are citizens of India and are either current or former employees of John Pickle, Inc., whose names are currently unknown but discoverable.

3.   John Pickle, Inc. is an Oklahoma corporation with its principal place of business in Tulsa County, Oklahoma.

4.   The most significant witnesses are, and documentary evidence, is located in Tulsa County, Oklahoma.

5.   Jurisdiction is proper under 28 U.S.C. §1331 in that the Plaintiffs allege violations of the Fair Labor Standards Act as set forth more fully below.

6.   Jurisdiction is proper under 28 U.S.C. §1331 in that Plaintiffs allege racial discrimination in the workplace in violation of 42 U.S.C. §1981 as set forth more fully below.

7.   Jurisdiction is proper under 28 U.S.C. §1332, the doctrines of ancillary and pendent

jurisdiction and on the basis that it is in the interests of judicial efficiency and economy that the state common law claims for false imprisonment, deceit and intentional infliction of emotional distress be heard in this Court.

8. John Pickle is an individual residing within the Northern District of Oklahoma and is believed to be the President and an owner of John Pickle, Inc.

9. Venue is proper for the reasons set forth above and pursuant to 28 U.S.C. §1391.

11. The amount in controversy, exclusive of interest and costs, is in excess of $75,000.00.

## BACKGROUND FACTS

12. During the year 2001 and currently, John Pickle, Inc. was and is in the business of manufacturing coal dryer bases, heat exchanger parts, pressure vessels, and other items.

13. During the year 2001, John Pickle, Jr. (hereinafter "Pickle"), President of John Pickle, Inc., traveled to India along with other employees, agents and servants of John Pickle, Inc. for the purpose of recruiting experienced high tech welders, fitters, electricians, and engineers, as well as cooks specializing in the preparation of Indian foods, to travel to Tulsa, Oklahoma, to work for John Pickle, Inc. as welders, fitters, electricians, engineers and cooks.

14. Pickle, along with other employees, agents and servants of John Pickle, Inc., made material representations to the Plaintiffs which were false and made when John Pickle, Inc., its employees, agents and servants, either knew they were false and were made recklessly without any knowledge of their truth and with the intent to entice the Plaintiffs to terminate their employment with other companies and begin working for John Pickle, Inc.

15. Relying upon the false representations made by employees, agents and servants of John Pickle, Inc., the Plaintiffs terminated their employment with their prior employees and traveled

to Tulsa, Oklahoma and began working for John Pickle, Inc.

16. At all relevant times, each of the Plaintiffs were employees of John Pickle, Inc. working, oftentimes, in excess of forty (40) hours per week.

17. During the period in which the Plaintiffs were employed by John Pickle, Inc., John Pickle, Inc. breached the federal minimum wage rate of $5.15 per hour by paying the Plaintiffs far below the federal minimum work rate of $5.15 per hour.

18. On many occasions, the Plaintiffs worked in excess of forty (40) hours per week.

19. John Pickle, Inc. violated the provisions of the Fair Labor Standards Act by failing to compensate the Plaintiffs at a rate consistent with the federal minimum wage rate and for overtime worked.

20. John Pickle, Inc.'s violation of the Fair Labor Standards Act was willful, knowing, and done with the intent to violate the provisions of that Act.

21. At all relevant times John Pickle, Inc. employed non-Indian workers, in addition to the Plaintiffs, to perform identical or substantially identical work as the Plaintiffs were performing.

22. The wages paid to the non-Indian workers was far more than what was being paid to the Indian workers.

23. John Pickle, Inc. paid Indian workers far less based on the criteria of race.

24. Once in Tulsa, Oklahoma, the Plaintiffs were transported to a John Pickle, Inc. factory where they were required to work, sleep and eat.

25. Concrete cubicles with shower rods and curtains and steel frame bunk beds were prepared in the factory and the Plaintiffs were compelled, against their will, to eat and sleep at the John Pickle, Inc. factory.

26. On many occasions, the Plaintiffs were not allowed to leave and/or travel freely to

any other locations, within and without, Tulsa, Oklahoma and were required, against their will, to stay at the John Pickle, Inc. plant in Tulsa, Oklahoma.

27. On numerous occasions, armed guards were placed at the gates of the factory to discourage travel from the factory and/or to compel the Plaintiffs to stay at the factory when they were not on duty or working.

28. On numerous occasions, the Plaintiffs were held unlawfully against their will and within the confines of the John Pickle, Inc. factory.

## COUNT I-VIOLATION OF FAIR LABOR STANDARDS ACT

29. John Pickle, Jr. had the right to control and did control the amount, method of payment and payment of wages to the Plaintiffs and is therefore individually liable to the Plaintiffs.

30. John Pickle, Jr. was not only acting on behalf of John Pickle, Inc. but was acting on his own individual behalf in violating the Fair Labor Standards Act.

31. Paragraphs one (1) through twenty-eight (28) are incorporated herein by reference.

32. John Pickle, Inc. violated the Fair Labor Standards Act.

33. As a result of this violation, all of the Plaintiffs have suffered damages, including, without limitation, present and future earnings.

## COUNT II-RACE DISCRIMINATION

34. Paragraphs one (1) through thirty-three (33) are incorporated herein by reference.

35. At all relevant times, the Plaintiffs were employees of John Pickle, Inc.

36. The wages paid to the non-Indian employees was far more than what was being paid to the Plaintiffs who were performing almost the same or identical work as the non-Indian employees and while the Indian employees, in many cases, were more experienced than the non-Indian employees.

37. John Pickle, Inc. paid the Indian workers far less based upon the criteria of race and provided more benefits to the non-Indian workers based upon the criteria of race.

38. John Pickle, Jr., as an owner and officer of John Pickle, Inc., is individually liable for race discrimination pursuant to the provisions of 42 U.S.C. § 1981.

39. John Pickle, Jr., in committing race discrimination, was not only acting on behalf of John Pickle, Inc., but was acting on his own individual behalf.

40. As a result of the above, the Plaintiffs suffered and are entitled to damages pursuant to the provision of 42 U.S.C. § 1981, including punitive damages.

## COUNT III-DECEIT

41. Paragraphs one (1) through forty (40) are incorporated herein by reference.

42. John Pickle, Inc. made false, material representations when it either knew or should have known that the representations being made were false or were being made recklessly without any knowledge of their truth and with the intent that the statements be relied upon by the Plaintiffs.

43. The false, material representations which were made by agents, servants and employees of John Pickle, Inc. include, without limitation, the following:

  A. The Plaintiffs were told that they would become permanent employees of John Pickle, Inc.

  B. The Plaintiffs were told that they would become permanent employees of John Pickle, Inc. in the United States.

  C. The Plaintiffs were told that they would be paid the same amount as American workers for John Pickle, Inc. who had similar training, skills and experience.

  D. The Plaintiffs were told that they would be provided with cars for

transportation.

E. The Plaintiffs were told that they would live in apartments.

F. The Plaintiffs were told that they would have access to telephones to stay in regular communication with their families in India.

G. The Plaintiffs were told that they would have regular meals of Indian food.

H. The Plaintiffs were told that they would be given the opportunity to work in the United States indefinitely and to bring their family members to the United States.

I. The Plaintiffs were told that they would be provided work boots, clothes and other necessary work equipment and that these items would be provided free of charge.

44. The representations in paragraph 43 above were false, material and made with the intent that they should be relied upon by the Plaintiffs.

45. John Pickle, Jr., as an owner and officer of John Pickle, Inc., and having individually made the false, materially misleading statements, is individually liable to the Plaintiffs.

46. John Pickle, Jr., in making false and materially misleading statements, was acting not only on behalf of John Pickle, Inc. but was acting on his own individual behalf.

47. Each of the above Plaintiffs paid a substantial "processing fee" to agents, servants and employees of John Pickle, Inc., which, in many cases, represented life savings and/or were obtained by the Plaintiffs by borrowing from relatives and other sources.

48. As a result of the above, the Plaintiffs have suffered damages, to include, without limitation, the following:

a. Contractual damages for wages;

  b. Past and future lost earnings;

  c. Processing fee and travel expenses;

  d. Past and future emotional pain and suffering:

49. In addition, the Plaintiffs are entitled to exemplary damages.

## COUNT IV–FALSE IMPRISONMENT

50. Paragraphs one (1) through forty-nine (49) are incorporated herein by reference.

51. John Pickle, Jr., as an owner and officer of John Pickle, Inc., is individually liable for false imprisonment as he directed that the Plaintiffs be kept against their will on the property of John Pickle, Inc, and was acting not only on behalf of John Pickle, Inc. but on his own individual behalf.

52. On many occasions, the Plaintiffs were kept against their will on the property of John Pickle, Inc. and were not allowed to leave.

53. As a result, the Plaintiffs have sustained damages.

54. In addition, the Plaintiffs are entitled to punitive damages.

## COUNT V–INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

55. Paragraphs one (1) through fifty-five (55) are incorporated herein by reference.

56. The Defendant's actions in the setting in which they occurred were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

57. The Defendant intentionally or recklessly caused severe emotional distress to the Plaintiffs beyond that which a reasonable person could be expected to endure.

58. John Pickle, Jr., as an owner and officer of John Pickle, Inc., is individually liable for intentional infliction of emotional distress as he either directed or committed the activities which were so extreme and outrageous as to go beyond all possible bounds of decency and would be

considered atrocious and utterly intolerable in a civilized society and was acting not only on behalf of John Pickle, Inc. but was acting on his own individual behalf.

59. As a result of the Defendant's actions, the Plaintiffs have suffered damages.

60. In addition, the Plaintiffs are entitled to exemplary damages.

## COUNT VI-CIVIL RIGHTS ACT CLAIM

61. Paragraphs one (1) through sixty (60) are incorporated herein by reference.

62. The actions of the defendant were in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, for which the Plaintiffs are entitled to damages.

## COUNT VII-IMMIGRATION REFORM AND CONTROL ACT CLAIM

63. Paragraphs one (1) through sixty-three (63) are incorporated herein by reference.

64. John Pickle, Jr., as an owner and officer of John Pickle, Inc., is individually liable for violating the provisions of the Immigration Reform and Control Act, 8 U.S.C. § 1324, and was acting not only on behalf of John Pickle, Inc. but on his own individual behalf.

65. The actions of the defendant were in violation of the provisions of the Immigration Reform and Control Act, 8 U.S.C. §1324, for which the plaintiffs are entitled to damages.

WHEREFORE, premises considered, the Plaintiffs each and all would respectfully request an amount of money in excess of $75,000.00 per Plaintiff to compensate them as damages for past, present and future lost wages, race discrimination, deceit, for false imprisonment, intentional infliction of emotional distress, and an amount of punitive damages sufficient to punish Defendant and deter future misconduct, for pre and post judgment interest, for costs incurred, for attorneys' fees and for all other relief at law or in equity to which they may show themselves justly entitled.

Respectfully submitted,

**RICHARDSON, STOOPS,
RICHARDSON & WARD**

_____
Fred E. Stoops, Sr., OBA# 8666
Keith A. Ward, OBA# 9346
Richard D. Marrs, OBA# 5705
Eddie D. Ramirez OBA#11479
6555 South Lewis
Tulsa, Oklahoma 74136
(918) 492-7674
(918) 493-1925 Facsimile

and

B. Kent Felty, Esq.
403 East Cheyenne Avenue, Suite 500-11
Tulsa, Oklahoma 74136
(918) 587-9958
(918) 587-9951 Facsimile

and

Joe McDoulett, Esq.
Catholic Charities
1501 N. Classen
Oklahoma City, Oklahoma 73106
(405) 523-3001
(405) 523-3030

*Attorneys for Plaintiffs*

## CERTIFICATE OF MAILING

I hereby certify that on the __9th__ day of July, 2002, I caused a true and correct copy of the above and foregoing instrument to be mailed by U. S. Mail, postage prepaid thereon, to the following:

B. Kent Felty, Esq.
403 South Cheyenne, Suite 500-11
Tulsa, Oklahoma 74103

Joe McDoulett, Esq.
Catholic Charities
1501 North Classen
Oklahoma City, Oklahoma 73106

Linda Cole McGowan, Esq.
Philip J. McGowan, Esq.
J. Thomas Mason, Esq.
CARPENTER, MASON & McGOWAN
1516 South Boston Avenue, Suite 205
Tulsa, Oklahoma 74119-4013

_____
Richard D. Marrs